UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| LAURA Q.,[1] | : | Case No.  2:23-cv-131 |
| Plaintiff, | : | |
| vs. | : | Magistrate Judge Peter B. Silvain, Jr. |
| | : | (by full consent of the parties) |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | : | |
| Defendant. | : | |

**DECISION AND ENTRY**

Plaintiff Laura Q. brings this case challenging the Social Security Administration's denial of her application for a period of disability and Disability Insurance Benefits.  The case is before the Court upon Plaintiff's Statement of Errors (Doc. #9), the Commissioner's Memorandum in Opposition (Doc. #10), and the administrative record (Doc. #6).

**I.    Background**

The Social Security Administration provides Disability Insurance Benefits to individuals who are under a "disability," among other eligibility requirements.  *Bowen v. City of New York*, 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 423(a)(1), 1382(a).  The term "disability" encompasses "any medically determinable physical or mental impairment" that precludes an applicant from

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs only by their first names and last initials. *See also* S.D. Ohio General Rule 22-01.

performing "substantial gainful activity." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see Bowen*, 476 U.S. at 469-70.

In the present case, Plaintiff applied for benefits on April 2, 2020, alleging disability due to several impairments, including bipolar disorder, osteoarthritis, carpal tunnel syndrome, anxiety, depression, ankle and foot injury, and bilateral knee pain. (Doc. #6-6, *PageID* #290). After Plaintiff's application was denied initially and upon reconsideration, she requested and received a hearing before Administrative Law Judge (ALJ) Earl Ashford. Thereafter, the ALJ issued a written decision, addressing each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. § 404.1520. He reached the following main conclusions:

| | | |
|---|---|---|
| Step 1: | | Plaintiff did not engage in substantial gainful activity during the period from her alleged onset date of January 1, 2019, as amended, through her date last insured of June 30, 2019. |
| Step 2: | | Through the date last insured, she had the following severe impairments: depressive/bipolar disorder and substance dependence (alcohol). |
| Step 3: | | Through the date last insured, she did not have an impairment or combination of impairments that met or medically equaled the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. |
| Step 4: | | Through the date last insured, her residual functional capacity (RFC), or the most she could do despite her impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consisted of a "medium work … except postural limitation of no climbing of ladders, ropes, or scaffolds. Work limited to simple, routine, and repetitive tasks in a work environment free from fast paced production requirements, such as moving assembly lines and conveyor belts, involving only work-related decisions, with few if any workplace changes." |
| | | Through the date last insured, she was unable to perform any past relevant work. |

  Step 5:  Through the date last insured, considering her age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed.

(Doc. #6-2, *PageID* #s 36-41). Based on these findings, the ALJ concluded that Plaintiff has not been under a benefits-qualifying disability at any time from January 1, 2019, the alleged onset date, through June 30, 2019, the date last insured. *Id.* at 41.

  The evidence of record is adequately summarized in the ALJ's decision (Doc. #6-2, *PageID* #s 34-41), Plaintiff's Statement of Errors (Doc. #9), and the Commissioner's Memorandum in Opposition (Doc. #10). To the extent that additional facts are relevant, they will be summarized in the discussion below.

**II.**  **Standard of Review**

  Judicial review of an ALJ's decision is limited to whether the ALJ's finding are supported by substantial evidence and whether the ALJ applied the correct legal standards. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). Substantial evidence is such "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014) (citing *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir. 2007)). It is "less than a preponderance but more than a scintilla." *Id.*

  The second judicial inquiry—reviewing the correctness of the ALJ's legal analysis—may result in reversal even if the ALJ's decision is supported by substantial evidence in the record. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). Under this review, "a decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow

its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen*, 478 F.3d at 746 (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

### III. Discussion

In this case, Plaintiff asserts that substantial evidence does not support the ALJ's finding that some of her physical impairments are not severe. (Doc. #9, *PageID* #s 658-62). Further, Plaintiff argues that the ALJ did not properly address the requirements of Social Security Ruling (SSR) 96-8p, as set forth by the Sixth Circuit in *Emard v. Commissioner of Social Security*, 953 F.3d 844 (6th Cir. 2020). *Id.* at 659-60. In contrast, the Commissioner maintains that substantial evidence supports the ALJ's Step Two finding and his RFC determination. (Doc. #10, *PageID* #s 666-77).

As noted above, Plaintiff applied for Disability Insurance Benefits, alleging disability beginning January 1, 2019, as amended during the hearing.[2] To be eligible for Disability Insurance Benefits, a person must become disabled *during* the period in which she has met the statutory special earnings requirements. 42 U.S.C. §§ 423(a), (c), (d); 20 C.F.R § 404.130. "If a claimant is no longer insured for disability [insurance] benefits at the time she files her application, she is entitled to disability insurance benefits only if she was disabled before the date she was last insured." *Renfro v. Barnhart*, 30 F. App'x 431, 435 (6th Cir. 2002); *see Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990) ("In order to establish entitlement to disability insurance benefits, an individual must establish that he became 'disabled' prior to the expiration

---

[2] During the hearing on January 5, 2022, Plaintiff's attorney confirmed that they previously amended Plaintiff's alleged onset date to January 1, 2019. (Doc.#6-2, *PageID* #s 68-69).

4

of his insured status.") (citing 42 U.S.C. § 423(a) and (c); *Higgs v. Bowen,* 880 F.2d 860, 862 (6th Cir. 1988)). Plaintiff last met the insured status requirements on June 30, 2019, also known as her date last insured. (Doc. #6-2, *PageID* #36). Accordingly, to be eligible for Disability Insurance Benefits, Plaintiff had the burden of proving that she was disabled within the meaning of the Social Security Act prior to June 30, 2019. *See Wirth v. Comm'r of Soc. Sec.*, 87 F. App'x 478, 479 (6th Cir. 2003).

### A. Step Two

At Step Two of the five-step sequential evaluation process, the ALJ determines whether an individual's impairments are severe and whether they meet the twelve-month durational requirement. 20 C.F.R. § 404.1520(a). A "severe impairment" is defined as "any impairment or combination of impairments which significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). Plaintiff's burden of establishing a "severe" impairment at Step Two of the disability determination process is construed as a "*de minimis* hurdle." *Higgs*, 880 F.2d at 862. "Under the prevailing *de minimis* view, an impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience." *Id.*

Nevertheless, an ALJ's failure to find additional severe impairments at Step Two "[does] not constitute reversible error," where the ALJ considers all of a plaintiff's impairments in the remaining steps of the disability determination. *Maziarz v. Sec'y of Health and Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987). "In other words, if an ALJ errs by not including a particular impairment as an additional severe impairment in [S]tep [T]wo of his analysis, the error is harmless as long as the ALJ found at least one severe impairment, continued the sequential analysis, and

ultimately addressed all of the claimant's impairments in determining his [residual functional capacity]." *Flory v. Comm'r of Soc. Sec.*, 477 F. Supp. 3d 672, 678-79 (S.D. Ohio 2020) (citing *Meadows v. Comm'r of Soc. Sec.*, No. 1:07-CV-1010, 2008 WL 4911243, at *13 (S.D. Ohio Nov. 13, 2008); *Swartz v. Barnhart*, 188 F. App'x 361, 368 (6th Cir. 2006)).

In the present case, at Step Two, the ALJ found that Plaintiff had two severe impairments: depressive/bipolar disorder and substance dependence (alcohol). (Doc. #6-2, *PageID* #36). He also found that Plaintiff had several non-severe impairments including left ankle arthritis, history of injury to the right knee, and osteoarthritis/bilateral carpal tunnel syndrome. *Id.* at 37. Substantial evidence supports the ALJ's conclusion that these impairments are not severe.

*Ankles*

The ALJ recognized that Plaintiff sustained an injury to her left ankle when she was nineteen years from which she developed arthritis. (Doc. #6-2, *PageID* #37). Additionally, he noted that Plaintiff underwent surgery to remove hardware from her right ankle.[3] *Id.* However, the ALJ concluded that "the medical evidence fails to support limitations in [Plaintiff's] ability to perform work activities prior [to] June 2019, the date last insured." *Id.* In support, the ALJ noted that in May 2019, Plaintiff's gait and balance appeared intact. *Id.* (citing Doc. #6-7, *PageID* #425).

Substantial evidence supports the ALJ's finding that there is little evidence to support Plaintiff's alleged limitations prior to June 30, 2019. *See Strong v. Soc. Sec. Admin.*, 88 F. App'x 841, 845 (6th Cir. 2004) ("Evidence of disability obtained after the expiration of insured status is

---

[3] Plaintiff asserts that "the ALJ makes absolutely no reference at all to the right ankle." (Doc. #9, *PageID* #660). Although the ALJ did not explicitly refer to her right ankle, the ALJ did discuss the surgery to remove hardware from Plaintiff's right foot. (Doc. #6-2, *PageID* #77).

generally of little probative value.") (citation omitted). There are very few relevant medical records from the time between Plaintiff's alleged onset date, January 1, 2019, and her date last insured, June 30, 2019. Indeed, as recognized by the ALJ, the only relevant treatment note was from a psychiatry appointment in May 2019 where Plaintiff's provider indicated that her gait and balance were intact. (Doc. #6-7, *PageID* #425).

However, four months after Plaintiff's date last insured, on October 31, 2019, Plaintiff reported to her orthopedist, Brian Tscholl, M.D., that she had pain in her left ankle and right foot. (Doc. #6-7, *PageID* #499). Dr. Tscholl noted that he last saw Plaintiff "about five years ago," and she had a history of a fall from a balcony in 1999. *Id.* Upon examination, he noted that Plaintiff had tenderness to palpation and limited range of motion. *Id.* Dr. Tscholl opined that Plaintiff's right foot issue was "a solvable problem" and recommended that she undergo surgery to remove two screws. *Id.* at 500. Additionally, Dr. Tscholl indicated that Plaintiff had worsening arthritis of her left ankle. *Id.* at 499. He noted that he could give her an injection when she had surgery and that she needed a new Arizona brace. *Id.* On December 27, 2019, Plaintiff underwent surgery on her right foot and an injection to her left ankle. *Id.* at 498, 598-99. At her follow-up appointment on January 9, 2020, Dr. Tscholl noted that Plaintiff "had a little bit more pain than she thought she would after surgery but she is doing better now." *Id.* at 496.

Plaintiff argues that her ankle/foot "conditions do not develop overnight and thus it is reasonable to assume that these medical impairments existed three months prior, or in June of 2019 and are severe impairments." (Doc. #9, *PageID* #s 660-61). The Commissioner disagrees, asserting that "since the cause of her pain seemed to be broken hardware from a surgery two

7

decades earlier, it is likely that the failure of this hardware did indeed happen 'overnight.'" (Doc. #10, *PageID* #669).

Given that Plaintiff originally injured her foot and ankle in 1999 and that Dr. Tscholl diagnosed "worsening arthritis," it is reasonable to assume that at least some of Plaintiff's foot and/or ankle impairments did not develop overnight. However, it is not evident from the record when the specific impairments developed or when Plaintiff's alleged limitations began. *See Meece v. Barnhart*, 192 Fed. App'x 456, 465 (6th Cir. 2006) ("[J]udges, including administrative law judges of the Social Security Administration, must be careful not to succumb to the temptation to play doctor."). Furthermore, regardless of when Plaintiff's impairments developed, there is no medical evidence that Plaintiff's ankle impairments limited her ability to perform work-related activities prior to June 30, 2019, her date last insured. *See Fackler v. Saul*, No. 3:20-CV-00790, 2021 WL 3493511, at *11 (N.D. Ohio July 16, 2021), *report and recommendation adopted sub nom. Fackler v. Comm'r of Soc. Sec.*, No. 3:20-CV-790, 2021 WL 3492129 (N.D. Ohio Aug. 9, 2021) ("it is well established that a diagnosis alone does not indicate the functional limitations caused by an impairment.") (citing *See Young v. Sec'y of Health & Human Servs.*, 925 F.2d 146, 151 (6th Cir. 1990)); *Teresa F. v. Saul*, No. 1:18-cv-01967-JRS-MPB, 2019 WL 2949910, *5, n. 7 (S.D. Ind. July 9, 2019) ("a diagnosis alone is not enough to establish specific functional limitations as a matter of right."). Indeed, no medical source opined that Plaintiff's ankle impairments caused any work-related limitations, let alone that she had such limitations prior to June 30, 2019. In contrast, the record reviewing physicians' opinions support the ALJ's conclusion. They opined in July 2020 and December 2020 that there was "insufficient evidence" of Plaintiff's impairments prior to her date last insured. (Doc. #6-3, *PageID* #s 86, 92).

Accordingly, because Plaintiff has not shown that her feet or ankle impairments caused more than minimal limitations on her ability to do basic work activities prior to her date last insured, the undersigned finds that substantial evidence supports the ALJ's finding that her impairments were not severe. *See Watters v. Comm'r of Soc. Sec.*, 530 F. App'x 419, 424-25 (6th Cir. 2013) ("[T]his court has consistently affirmed that the claimant bears the burden of producing sufficient evidence to show the existence of a disability.") (citing *Harley v. Comm'r of Soc. Sec.*, 485 F. App'x 802, 803 (6th Cir. 2012) (other citation omitted)).

*Hands*

The ALJ acknowledged that Plaintiff alleged difficulty with the use of her hands due to osteoarthritis and bilateral carpal tunnel syndrome. (Doc. #6-2, *PageID* #37). However, the ALJ found that both were diagnosed after her date last insured and that the record fails to support any limitations prior to her date last insured. *Id.*

Substantial evidence supports the ALJ's conclusion. Although Plaintiff testified that she has been experiencing hand issues since shortly after she started graduate school in 2016, (Doc. #6-2, *PageID* #60), she did not report pain in her hands and wrists to a medical provider until October 10, 2019—more than three months after her date last insured. (Doc. #6-7, *PageID* #638). At that appointment, Plaintiff indicated that the pain had been present for six months. *Id.* X-rays of both hands revealed moderate to advanced triscaphe degenerative change, mild bilateral first carpometacarpal osteoarthritis, and mild left interphalangeal osteoarthritis. *Id.* at 480. Additionally, on December 4, 2019, Plaintiff began treatment with James Cassandra, D.O. *Id.* at 603. Plaintiff reported progressive pain in both hands as well as numbness and tingling in the mornings a few times a week. *Id.* She indicated that she has had pain for several months. *Id.* Dr.

9

Cassandra diagnosed bilateral carpal tunnel syndrome and referred Plaintiff for an EMG and nerve conduction study. *Id.* at 603-04. The EMG and nerve conduction study showed mild bilateral carpal tunnel syndrome. *Id.* at 601. Although this evidence establishes that Plaintiff has osteoarthritis and carpal tunnel syndrome, it does not establish that she had either impairment before her date last insured. Moreover, it does not show that either condition caused more than minimal limitations on her ability to do basic work activities prior to her date last insured. Accordingly, the undersigned finds that substantial evidence supports the ALJ's conclusion that Plaintiff's osteoarthritis and carpal tunnel syndrome were not severe impairments.

*Right Knee*

The ALJ recognized that Plaintiff has a history of injury to her right knee after a fall in 2017. (Doc. #6-2, *PageID* #37). He noted that x-rays from the emergency room showed mild tricompartmental degenerative changes. *Id.* (citation omitted). However, the ALJ concluded that there is no medical evidence to support the limitations alleged by Plaintiff. *Id.* Substantial evidence supports the ALJ's conclusion that Plaintiff's right knee injury is not severe.

The record shows that Plaintiff presented to the emergency room on August 19, 2017, reporting pain in her right knee after she slipped, fell, and twisted her knee. (Doc. #6-7, *PageID* #517). After the x-rays, Plaintiff was discharged with pain medication and instructions to ice aggressively, use crutches as needed, and follow up with her primary care provider. *Id.* at 515-19. There is no indication that she followed up with any medical provider. Indeed, it does not appear that she mentioned any problems with her knees to a medical provider until May 2021, when she reported pain in both knees to Jeffrey Backes, M.D. *Id.* at 618.

The medical records from August 2017 do not establish that Plaintiff's knee injury caused any limitations that lasted or were expected to last for twelve months. *See* 20 C.F.R. § 404.1520(a). Furthermore, Plaintiff has not pointed to a medical opinion or other evidence that indicates that her right knee injury caused more than minimal limitation on her ability to do basic work activities. Indeed, Plaintiff does not specifically indicate what limitations result from her knee injury. Although Plaintiff testified that she cannot walk a lot or be on her feet for extended periods, she stated that those limitations are the result of her ankle injury and arthritis. (Doc. #6-2, *PageID* #s 55-56). Thus, substantial evidence supports the ALJ's conclusion that Plaintiff's right knee injury is not severe.

In summary, substantial evidence supports the ALJ's severity determination at Step Two. However, to the extent the ALJ erred in finding that Plaintiff's ankle impairments, osteoarthritis and bilateral carpal tunnel syndrome, and history of injury to the right knee are not severe impairments, such error is harmless as long as the ALJ properly considered these non-severe impairments when assessing Plaintiff's RFC. *See Maziarz*, 837 F.2d at 244.

### B. Residual Functional Capacity

An individual's RFC "is the most [she] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1); *see also Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 155 (6th Cir. 2009). The Social Security regulations, rulings, and Sixth Circuit precedent provide that the ALJ is charged with the final responsibility in determining a claimant's RFC. *See, e.g.*, 20 C.F.R. § 404.1527(d)(2) (the final responsibility for deciding the residual functional capacity "is reserved to the Commissioner"); 20 C.F.R. § 404.1546(c) (if the claimant's case is at the ALJ hearing level, the ALJ is responsible for assessing his RFC); *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435,

439 (6th Cir. 2010) ("The Social Security Act instructs that the ALJ—not a physician—ultimately determines a claimant's RFC."). The ALJ's RFC assessment must be based on all the relevant evidence in the case record. 20 C.F.R. § 404.1545(a). If substantial evidence supports the ALJ's RFC assessment, "the Court defers to that determination even in the face of substantial evidence supporting the opposite conclusion." *Vickers v. Comm'r of Soc. Sec.*, No. 20-1935, 2021 WL 4468414, at *4-5 (6th Cir. July 12, 2021) (citing *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405-06 (6th Cir. 2009)).

Plaintiff contends that the ALJ did not properly address her non-severe impairments when assessing her RFC as set forth by SSR 96-8p. (Doc. #9, *PageID* #660). Specifically, SSR 96-8p requires that an ALJ, when determining the RFC, must "consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" SSR 96-8p, 1996 WL 374184, at *5 (S.S.A. July 2, 1996); *see also* 20 C.F.R. § 404.1545(e) (noting that the Commissioner will consider all of a claimant's medically determinable impairments, even if they are not severe). As noted by Plaintiff, the Sixth Circuit has clarified an ALJ's obligation to consider non-severe impairments under SSR 96-8p in *Emard v. Commissioner of Social Security*, 953 F.3d 844 (6th Cir. 2020). In *Emard*, the ALJ did not discuss a plaintiff's non-severe impairments when assessing the plaintiff's RFC. *Emard*, 953 F.3d at 851. Nevertheless, the Court found that the ALJ's express reference to SSR 96-8p, her discussion of the functional limitations imposed by the plaintiff's non-severe impairments at Step Two, and her assurance that she had "considered the entire record and 'all symptoms,'" provided a sufficient basis to conclude that the ALJ properly considered all of the plaintiff's impairments when crafting the RFC. *Id.* at 851-52.

12

Plaintiff asserts that the ALJ failed to meet the *Emard* standard because he did not adequately discuss the functional limitations imposed by all of Plaintiff's non-severe impairments at Step Two.[4] (Doc. #9, *PageID* #660). However, unlike the ALJ in *Emard*, ALJ Ashford acknowledged Plaintiff's non-severe impairments when assessing Plaintiff's RFC. (Doc. #6-2, *PageID* #39). The ALJ generally stated that he "accounted for all impairments, including those that are not severe, when assessing [Plaintiff's] residual functional capacity." *Id.* Moreover, he specifically recognized that Plaintiff testified at the hearing that she had exertional limitations due to her ankle injuries and difficulty using her hands. *Id.* The ALJ found, as he similarly explained at Step Two, "the evidence prior to June 30, 2019, fails to document significant limitations in the ability to perform work tasks due to her ankle and feet conditions or due to any severe physical impairments." *Id.* In reaching this conclusion, the ALJ reasonably relied on the opinions of the record reviewing physicians. They opined, in July 2020 and December 2020, that there was "insufficient evidence" of Plaintiff's impairments prior to her date last insured. (Doc. #6-3, *PageID* #s 86, 92). The ALJ found their opinions to be persuasive. (Doc. #6-2, *PageID* #39). Despite the lack of evidence of limitations from Plaintiff's ankle impairments prior to her date last insured, to account for Plaintiff's testimony, the ALJ nonetheless limited Plaintiff to medium

---

[4] Plaintiff does not argue that the ALJ failed to address the other factors set forth in *Emard*. Nonetheless, a review of the ALJ's decision reveals that he addressed both. First, the ALJ expressly referenced SSR 96-8p in his summary of the applicable law. (Doc. #6-2, *PageID* #s 35-36) ("In making this [RFC] finding, the undersigned must consider all of the claimant's impairments, including impairments that are not severe[.]") (citing 20 C.F.R. §§ 404.1520(e) and 404.1545; SSR 96-8p)). Second, when assessing Plaintiff's RFC, the ALJ stated that he considered Plaintiff's statements concerning her impairments and their effect on her ability to perform work activity and accounted for all Plaintiff's impairments, including those that are not severe. *Id.* at 39. He likewise noted at Step Two that he "has accounted for all impairments, including those that are not severe, when assessing [Plaintiff's] residual functional capacity. (Doc. #6-2, *PageID* #37). Further, the ALJ indicated that he "considered all the evidence of record …." *Id.* at 40.

exertion with the postural limitation of no climbing ladders, ropes, or scaffolds. (Doc. #6-2, *PageID* #39).

The ALJ mentioned that Plaintiff testified to difficulty using her hands, but he did not include any limitations related to Plaintiff's osteoarthritis and bilateral carpal tunnel syndrome. However, this does not constitute err because the ALJ discussed the functional limitations imposed by these non-severe impairments at Step Two. *Emard*, 953 F.3d at 848-49. Specifically, the ALJ found that both impairments were diagnosed after Plaintiff's last date insured and that the record fails to support any limitations prior to her date last insured. (Doc. #6-2, *PageID* #37). As explained above, substantial evidence supports the ALJ's conclusion.

Furthermore, although the ALJ did not specifically address Plaintiff's knee impairments when assessing her RFC, the ALJ discussed Plaintiff's knee injury at Step Two, finding that there was no medical evidence to support Plaintiff's alleged limitations. (Doc. #6-2, *PageID* #37); *see Emard*, 953 F.3d at 848-49. Moreover, Plaintiff does not identify any functional limitations caused by her knee impairment. Thus, the ALJ did not err in failing to specifically address Plaintiff's knee impairment when assessing her RFC. *See* SSR 96-8p, 1996 WL 374184, at *1 ("When there is no allegation of a physical or mental limitation or restriction of a specific functional capacity, and no information in the case record that there is such a limitation or restriction, the adjudicator must consider the individual to have no limitation or restriction with respect to that functional capacity.").

In sum, the undersigned finds that the ALJ properly considered Plaintiff's non-severe impairments when assessing her RFC. Based on the foregoing reasons, Plaintiff's Statement of Errors is not well taken.

**IT IS THEREFORE ORDERED THAT:**

1. Plaintiff's Statement of Errors (Doc. #9) is **OVERRULED**;

2. The Commissioner's non-disability determination is **AFFIRMED**; and

3. The case is terminated on the docket of this Court.


<u>March 19, 2024</u>                                              *s/Peter B. Silvain, Jr.*
                                                                    Peter B. Silvain, Jr.
                                                                    United States Magistrate Judge